IN THE CIRCUIT COURT FOR MCMINN COUNTY, TENNESSEE

STATE EX REL. ALDOLPHUS PELLEY,

Petitioner,

v.

BO PERKINSON,

Defendant.

Docket No.: 2022-CV-298

FILED
145 pm
AUG 18 2023
RHONDA J. COOLEY
CIRCUIT COURT CLERK
BY RC D.C

## ORDER REGARDING MOTION FOR ATTORNEY FEES AND SANCTIONS, AND MOTION FOR DISCRETIONARY COSTS

This cause came to be heard on the 19th day of May, 2023, before the Circuit Court of McMinn County, Tennessee. This matter is now before the court based upon the motion for attorney fees and sanctions, as well as the motion for discretionary costs filed by the defendant on October 20, 2022. The defendant is represented by Attorney Daniel H. Rader, IV and/or /Lane Moore. The court has considered the motion and the brief in support of said motion, as well as the petitioner's response and second response in opposition to the defendant's motion. This matter was originally before the court based upon a verified petition for writ of ouster and a motion for immediate suspension filed by Attorney Van R. Irion on behalf of Adolphus Pelley and other petitioners. The petitioners are represented by Attorney Van R. Irion.

The court notes that a notice of nonsuit was filed and signed by Attorney Van Irion, claiming to represent the "petitioners". This is the same means of signature used by Attorney Irion in his original filing of the verified petition for writ of ouster, and the



SCANNED

accompanying motion. Based upon the plain language used in the original petition and accompanying motion, as well as in the notice of nonsuit, the court finds that at all times during this action, Attorney Irion has claimed to represent all of the petitioners.

The court notes that in both the verified petition, as well as the above mentioned motion, Attorney Van R. Irion signed both the verified petition along with the petitioner, Adolphus Pelley. Van R. Irion signed as Attorney for the petitioners (plural) on both the verified petition as well as the motion.

The court held a phone conference regarding the suspension hearing pending trial, and entered an order ordering a full evidentiary hearing on September 16, 2022.

The defendants filed an additional Motion to Dismiss Relators for Failure to Attend the Depositions. The petitioners responded in opposition to the defendant's motion. Furthermore, the defendants filed a motion for sanctions against the petitioners and/or the relators, to which the petitioners also responded. The defendants also filed a motion to dismiss relators "RE knowledge of facts and security for costs". The petitioners responded. The defendants also filed a motion for discretionary costs, to which the petitioners also responded.

This court held an evidentiary hearing on the petition, as well as the various motions, on September 22, 2022. At that hearing, the court made a bench ruling. After that bench ruling, the court finds that the petitioners filed their notice of non suit pursuant to Tennessee Rules of Civil Procedure 41.01 on September 30, 2022.

The court takes judicial notice of the fact that one of the 18 petitioners, Carla Aterburn, filed a notice of voluntary dismissal, wherein she set out as follows:

> ***I, Carla Aterburn, Relator and Petitioner, hereby***

***voluntarily dismiss the above-captioned Petition and no longer want to participate. I was unaware as to what the Petition sought. I declare under penalty of perjury the foregoing is true and correct.***

(This notice of Voluntary Dismissal on behalf of Ms. Aterburn was handwritten and hand-signed by her and dated September 14, 2022).

The court finds that in the deposition testimony of another petitioner, Dawn Whiting, she testified that she had never met Mr. Irion before the deposition, and further testified that she did not know Mr. Irion. Furthermore, she testified that she first learned of Mr. Irion's name during the deposition. Dawn Whiting went on to testify that she did not claim that Mr. Irion was her lawyer, now or ever.

The court finds that another relator/petitioner, Christine Corum, testified that the first time she ever met Mr. Irion was on the day of her deposition. She testified that prior to that, she had never heard of Mr. Irion. She further testified that Mr. Irion was not her lawyer, now or ever. During her deposition, she was asked "Is Mr. Irion your lawyer?" She answered, "No Sir". She was then questioned, "Has he ever been your lawyer?" Her answer was, "No Sir". When asked who gave her the declaration to sign, she answered as follows: "I think it was Dick". When questioned as to whether or not it was it Mr. Pelley, her answer was, "I think. I'm not sure". When questioned about whether or not she had ever seen the verified petition for writ of ouster (the lawsuit), she answered that she had not seen it. When questioned whether or not she knew what the lawsuit was, she answered she had not read it.

The court was also provided deposition information from the deposition of Mr. Richesin, who, when asked if he knew the man sitting next to him (who was apparently Attorney Van Irion), he answered, "I have no idea". When asked had he seen him before the deposition, he answered "No", and when asked had he ever talked to Mr. Irion before his deposition, he answered "No". And, when asked whether or not Mr. Irion was his lawyer, he answered "No", and when asked whether or not he had a lawyer, he answered "No".

The court was also provided excerpts from the Deposition of Jonathan Brian Key. When Mr. Key was questioned as to whether or not he had ever heard of Mr. Irion until the day before his deposition, he answered "No", and further answered that he had never met Mr. Irion before, nor had he ever talked with Mr. Irion before the day prior to his deposition. When questioned as to whether or not he had ever seen Mr. Irion prior to his deposition, he answered "No Sir". He testified that Mr. Irion had to ask him who he was at the deposition. When questioned whether or not he had ever heard of Van Irion prior to the day before his deposition, his answer was "No Sir". Finally, Mr. Key testified that he did in fact sign the declaration document on August 2, 2022. Mr. Pelley apparently gave him the document to sign. He acknowledged that August 2nd was more than 2 weeks prior to the August 16 meeting, which is in fact what is being complained about in the declaration that he signed. Mr. Key testified that Mr. Pelley did not tell him that he was signing something concerning something that was allegedly going to happen on August 16, 2022.

The court was provided deposition excerpts from the declarant, Sarah Shytle. Ms. Shytle testified that when she signed the declaration, she did not know that it was

going to be attached to a lawsuit to remove Mr. Perkinson from office. She testified that she signed it because her husband wanted her to do it. She testified that she did not know that it was going to be attached to a lawsuit. She testified that she does not know now, she did not know in the past, and she has never known of anything that Mr. Perkinson had done wrong. When questioned about whether or not she knew anything about Robert's Rules of Order, or any other laws, or what the Athens City Charter said, she responded "No". When asked if she knew about what any of the Athens ordinances said, she answered "No". When asked whether or not she knew if anybody had complied with those items or not, she answered "No". When questioned as to whether or not she knew that anybody had ever done anything willfully or not, she responded, "That's right".

Based upon all of the above, the defendant argues that since many of the 18 petitioners/declarants testified that they have never met or heard of Mr. Irion at all, and/or claim never to have spoken to him prior to the filing of the original verified petition and motion, then there could not have been an attorney/client relationship created between them (see *State v. Jackson*, 444 S.W.3d 554, 599 (Tenn. 2014). The defendants argue that Attorney Irion represented to several of the petitioners on the record during their deposition that attorney fees could not be awarded against them, as set out in the defendant's brief in support of their motion for attorney fees and sanctions, and their motion for discretionary costs.

The court finds that the depositions of Mr. Richesin, Ms. Dawn Whiting, Ms. Christine Corum, all confirm by the declarants' own testimony, that Mr. Irion was not in fact their attorney. Each of those individuals confirm that Mr. Irion had never been their

lawyer. The court takes judicial notice of the fact that many of the declarants confirm that they had never seen Attorney Irion nor met him prior to the deposition, much less prior to the filing of the verified petition and motion to oust the defendant from office. The court takes judicial notice that the verified petition for writ of ouster and the application for immediate suspension pending trial sets out as follows:

> **Verified Petition for Writ of Ouster**
> **And Application for Immediate Suspension Pending Trial**
> Come now the State of Tennessee by and through Relator Petitioners, and their attorney Van R. Irion, and bring this Petition for Writ of Ouster against the defendant, Bo Perkinson, and in support thereof state as follows: (emphasis added)

Clearly, the representation is made by Mr. Irion as being the attorney for the Relator Petitioners. The court finds that the verified petition, as well as the motion, were signed "Attorney for Petitioners"- plural.

The court finds that one of the applicable statutes that applies in this case is T.C.A. §8-47-122(b). Furthermore, the defendant argues that the provisions of Rule 23.05 or 23.06, or Rule 66, also apply. The defendant argues that the applicable statutes provide that attorney fees should be charged to the relators, even when the complaint or petition is withdrawn. The defendant argues, if a nonsuit could prevent the imposition of attorney fees, then this provision could have no meaning, for any withdrawn complaint or petition via nonsuit would bar the award. Thus, this statute clearly provides that even when a case is nonsuited, the court may still tax costs and attorneys' fees. The court agrees. Furthermore, the defendant argues that the statute

separately and distinctly allows the court to tax attorney fees "if the court finds the charges alleged to be without merit". (T.C.A. §8-47-122(b)).

The court takes judicial notice that each of the declarations were simply blank forms, with blanks for the name and signature. The court finds that the declarations were prepared by Attorney Van Irion, and were handed out by either the petitioner Adolphus Pelley, or possibly another individual not named as a declarant. The court finds that many of the declarations were dated and signed weeks before the Council meeting that the actual lawsuit discusses. The court finds there is no way for these declarant/relators to have agreed to pursue a verified petition concerning a meeting that had never happened at the time they signed the declaration. The court has great concerns that this entire lawsuit was represented to the court to have been filed by people that did not even know a lawsuit was being filed, much less what the subject matter or issue of the lawsuit was. The court finds that this was done wilfully and intentionally by Attorney Irion and Petitioner Pelley.

Tennessee courts have consistently held that the ouster law should never be used for political inquisition, and should only be used for very serious breaches of the public trust:

> "Our cases teach that an ouster suit should only be brought if 'there is a clear case of official dereliction, as such a drastic statute should be invoked only in plain cases and not for purposes of inquisition.' The evidence of official dereliction should be clear and convincing.
>
> Official misconduct "must be of such a nature that the official could be indicted for a common law misdemeanor for misconduct in office." However, "[p]ublic officials acting in good faith, who, through ignorance, error, or oversight, run counter to a charter provision or some law, do not subject

> themselves to indictment and removal from office at common law, and under similar circumstances could not be removed from office under the Ouster Law."

*State ex rel. Plemons v. Wester*, 1999 WL 427644, at *3-4 (Tenn.App., 1999) (quoting *Vandergriff v. State*, 185 Tenn. 386, 206 S.W.2d 395, 397 (1937), *McDonald v. Brooks*, 387 S.W.2d 803, 806 (1965), and *State ex rel Citizens of Lawrenceburg v. Perkinson*, 10 S.W.2d 254, 255 (1929) (internal citations and footnote omitted).

See also *Commissioners of Powell-Clinch Utility Dist. v. Utility Management Review Bd.*, 427 S.W.3d 375, 385-86 (Tenn.Ct.App. 2013).

The court finds, based upon all of the facts and evidence before the court, that more than half of the relators and petitioners were legally insufficient to meet the threshold requirement of 10 citizens required by the statute. The court finds that all of the declarations, that were actually dated, are dated weeks before the events in the verified petition even occurred. Therefore, the court finds they could not possibly have supported an ouster based upon those events at the August 16 Council meeting that had not even yet occurred. The court finds that the overwhelming majority of the allegations made in the suit arise from the events that allegedly occurred August 16, 2022 at the Athens City Council meeting. The court notes that the verified petition discusses the August 16 meeting as follows:

**Incident of August 16, 2022**

> 25. At the August 16, 2022, regular monthly meeting of the Athens City Council Defendant Perkinson knowingly and repeatedly violated Council Member Dr. Pelley's basic rights and privileges, as established by RRO, as adopted into law by

said Council via Athens City Ordinances 1-101 and 1-102.

Specifics are set forth below.

The court finds that not one of the declarations is actually dated on or after August 16, 2022. The court finds that of the 18 declarations, only 6 were dated at all, and every one of those 6 is dated on August 2 or before. The court finds that of the remaining 12 declarations, the dates are simply left blank, including the named petitioner, Dick Pelley's own declaration. Tennessee Rule of Civil Procedure 72 requires the declarant to date his or her declaration under penalty of perjury that the foregoing is true and correct. Therefore, the court finds that all of the declarations are legally insufficient. Therefore, they do not meet the requirements of a declaration as a matter of law. The declarations set out as follows: "I have read and agree with all the facts set forth herein, and I have personal knowledge of the same." However, the court notes that the declarants' deposition testimony, as set out above, clearly show this was untrue. The court notes that the above-entitled petition referred to in the declaration pertains to items that had not yet occurred. The court finds there was in fact no petition in existence on either the July or August dates shown on the declarations. The verified petition and accompanying motion were not filed until August 18, 2022. The defendants filed their answer on September 8, 2022, as well as Notice of Depositions for the various relators.

The court finds that one of the declarants, Joshua Sinecoff, testified that he signed the declaration at the request of his family's landlord, Glenn Whiting. (See Sinecoff Deposition, pages 20, 21, 23 and 27). Mr. Sinecoff testified that he had never read the petition, that he did not know what the petition was requesting, nor did he know

what the subject matter of the lawsuit was. Furthermore, he testified that he did not know what an ouster was, he did not know any of the City Council members, nor did he know what any of this lawsuit was about. He testified that he did not even know what Mr. Perkinson's position was, nor did he know who the Mayor of the City of Athens was. Finally, when asked whether or not he wanted the court, or the judge and jury kick out the Mayor of the City of Athens, he response was "No, Sir".

Brenda Sinecoff, another declarant, testified that she never wanted anyone removed from office as well. She testified that she did not know that the declaration that she signed would be attached to a lawsuit to try to kick somebody out of office. She testified that she did not know that the lawsuit was asking the court to render a judgment against the defendant Bo Perkinson, and to have him immediately removed from office.

Likewise, Sarah Shytle testified that she had no basis to claim that Mr. Perkinson has conspired with anyone to do anything. She further testified that she had no basis to claim that Mr. Perkinson had not complied with any of the laws or rules, and she testified that when she signed the declaration, she did not know that it was going to be attached to a lawsuit to remove Mr. Perkinson from office. She simply stated that she signed it because her husband wanted her to. She testified she did not know that the declaration was going to be attached to any lawsuit. She testified that she did not know of anything that Mr. Perkinson did wrong at any time, whether now or in the past. She testified that she did not know anything about the Athens City Charter, nor any Athens ordinances, nor did she know whether or not the defendant or anyone else had complied with them or not. Finally, she testified she did not know if anybody had ever

done anything wilfully.

The court finds that Alejandro Mora, one of the initial declarants, had actually signed Mayor Perkinson's re-election petition. Mr. Mora testified that he did not want Mr. Perkinson removed from office, testifying: "As of today, I think Bo should stay on". (See Mora deposition, page 29).

The court finds that Jonathan Brian Key actually stopped his deposition to call James F. Logan, who he stated was his actual attorney. Mr. Logan then appeared in open court with Mr. Key at the outset of the emergency removal hearing, to withdraw Mr. Key from the case. Mr. Key testified that he never saw any other documents other than the one page declaration, and that he never saw, nor was shown, the verified petition drafted and/or filed by Mr. Irion or anyone else. Mr. Key, after talking with his attorney James F. Logan, actually had his deposition suspended at that point, and Mr. Logan came to court with Mr. Key the next day to have him withdrawn from the case.

In addition to the above, Carla Aterburn testified that she too never saw nor read the verified petition, and that she signed the declaration two weeks before the August 16, 2022 council meeting. She testified that she had never seen the lawsuit, nor did she know what the lawsuit was.

The court notes that in both the verified petition, as well as the above mentioned motion, Attorney Van R. Irion signed along with Petitioner Adolphus Pelley. Mr. Irion signs as Attorney for the "petitioners" in both the verified petition as well as the motion.

This court held the evidentiary hearing on the petition, as well as the various motions, on September 22, 2022. At that hearing, the court made a bench ruling. After that bench ruling, the court finds that the petitioners filed their notice of non suit

pursuant to Tennessee Rules of Civil Procedure 41.01 on September 30, 2022.

Based upon all of the above, the court finds that the declarations and the lawsuit were filed by Attorney Van R. Irion purporting to represent people who he had never met, nor had he ever explained the verified petition and motion to. The court finds that many of these declarants had never spoken to, or with, Mr. Irion at any time, nor had they heard of him until the day of their deposition, which was much later than the date of the filing of the verified petition and motion filed by Mr. Irion. The court finds that the filing of the ouster petition under these circumstances, was not only legally wrong, it was a willful misrepresentation to the court. The court finds that the filing of this petition, given all of the facts and circumstances now before the court, is a direct violation of Tennessee case law and statutes. The court acted initially upon the good faith belief that the verified petition for writ of ouster, as well as the accompanying motion/application for immediate suspension pending trial on petition for ouster, were filed in good faith and pursuant to law as presented. The court finds, now, that this is not the case. The court finds that T.C.A. §8-47-122(b) is intended to prevent this exact type of wrong. Based upon all of the findings set out herein, the court shall impose sanctions. The court finds that the proper remedy to remove Mr. Perkinson, or anyone else similarly situated from office, was and is in fact an election. The court finds, based upon the declarations and all of the facts and evidence before the court, that there was never a factual or legal basis to have brought this action. The court finds this is a political issue, or possibly a declaratory judgment issue.

The court finds, based upon the declarants' statements, and based upon the dates of the declarations, that this action was not filed in good faith, and could not have

been filed in good faith, given the sworn deposition statements of the declarants. Many of the declarants declared in their deposition that they neither knew Mr. Irion, nor had ever spoken to him, especially not about representing them in a lawsuit that they knew nothing about. This has not been contested or disputed by Attorney Van Irion. Yet, the court is faced with multiple pleadings signed by Mr. Irion as attorney for the petitioners (plural). The court finds, based upon all of the evidence, that Mr. Irion acted in concert with Petitioner Adolphus Pelley. The court finds that their actions and representations are a fraud upon the court.

Based upon all of the above, the court finds that the defendant is entitled to be repaid his attorney fees, pursuant to T.C.A. §8-47-122(b). The court received the motion for discretionary costs on September 29, 2022, seeking an amount of $6,993.35. The court finds the same to be reasonable, and the court therefore awards those discretionary costs in the amount of $6,993.35 to the defendant. The court enters judgment against attorney Van Irion and petitioner Adolphus Pelley for both the attorney fees in the amount of $48,682.92, as well as the discretionary costs in the amount of $6,993.35. The court finds the attorney's fees are reasonable and were incurred in the defense of the defendant.

In addition to the findings above, and based upon all of the facts set out above, the court finds that the ouster suit itself was, and is, a fraud upon this court. The court finds, based upon the declarants testimony, their declarations were simply untrue on their face, based upon the dates of the signatures alone. Furthermore, many of the declarants themselves testified they had no knowledge at all of anything set out in the petition. The declarants who were in fact the petitioners, for the most part stated not

only had they not met Attorney Irion, he was not their attorney. Again, this has not been disputed by Attorney Van Irion or anyone else. Furthermore, many of the declarants had no knowledge of the lawsuit or what it was about. Based upon these findings, the court finds that as an officer of the court, Mr. Irion's actions are, at a minimum reckless, and at a maximum they were done in bad faith. Completely aside from Rule 11, the courts of this state have the inherent power to supervise and control their own proceedings, the authority to sanction attorneys, but only for pursuing matters in bad faith or conducting themselves in a reckless manner. (See *Andrews v. Bible*, 812 S.W.2d 284, 291 (Tenn. 1991)). The Tennessee Court of Appeals has held that traditionally it has been the province of the courts to set standards for the bar, and that an attorney acts not only as a client's representative, but also an officer of the court, and accordingly has a duty to serve both masters. (See *Andrews v. Bible*). The court finds in this case that Mr. Irion represented to the court that he represented the petitioners when in fact he did not, based upon their own undisputed sworn testimony. Furthermore, the court finds that Mr. Irion provided to the court declarations and pleadings that were false on their face.

The court finds that the initial gatekeeper of any suit must be the attorney that files the suit as an officer of the court. The court finds that the preparing of blank declarations to be disseminated as was done in this case, by both Mr. Pelley and Attorney Van R. Irion, was not only reckless, they were done in bad faith. The court finds these actions to be both intentional and egregious. The court imposes the sanctions set out in this order in an effort to deter any similar future misconduct in the future. Based upon the findings as set out herein, the court will provide a copy of this

order to the Board of Professional Responsibility. Furthermore, the court orders that Attorney Van R. Irion shall self report to the Board of Professional Responsibility, the findings as set out in this order within 14 days from the entry of this order. This is a final order.

IT IS SO ORDERED.

This 18th day of August, 2023.

JUDGE J. MICHAEL SHARP

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing has been served upon the following by delivering the same via U. S. Mail and/or via facsimile to the parties listed below:

Van R. Irion, Esq.
Law Office of Van R. Irion
800 S. Gay St., Suite 700
Knoxville, TN 37929
Attorney for Petitioner
Ph:(865) 766-4040
Email: van@irionlaw.com

Daniel H. Rader, IV, Esq.
Lane Moore, Esq.
Moore, Rader & Fitzpatrick
46 N Jefferson Ave.
Cookeville, TN 38501
Attorneys for Defendant
Ph: (931) 526-3311
lane@moorerader.com
tgilbert@moorerader.com

This 18 day of August, 2023.

Rhonda J. Cooley
CLERK