**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Kelly L. Stephens
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: March 13, 2026

Mr. Brian Robert Bibb
Watson Roach Batson & Lauderback
900 S. Gay Street
Knoxville, TN 37902

Mr. Russell Lee Egli
Egli Law
11109 Lake Ridge Drive, Third Floor
Knoxville, TN 37934

Mr. Van R. Irion
800 S. Gay Street, Suite 700
Knoxville, TN 37929

Mr. Daniel Roberts Pilkington
Watson Roach Batson & Lauderback
900 S. Gay Street
Knoxville, TN 37902

Mr. Philip Aaron Wells
Spears, Moore, Rebman & Williams
601 Market Street, Suite 400
Chattanooga, TN 37402

> Re:  Case Nos. 24-5918/24-5919/25-5424, *Glenn Whiting v. City of Athens, TN, et al*
> Originating Case No. 3:23-cv-00220

Dear Counsel,

The attached opinion designated for full-text publication was filed today in these cases.

Yours very truly,

Kelly L. Stephens, Clerk

Cathryn Lovely, Opinions Deputy

cc: Ms. LeAnna Wilson

Enclosure

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0080p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

GLENN WHITING,

*Plaintiff-Appellant*,

*v.*

CITY OF ATHENS, TENNESSEE (24-5918/5919); MIKE KEITH AND BRANDON AINSWORTH (24-5918); STEVE SHERLIN (24-5919)

*Defendants-Appellees*.

No. 24-5918/5919

GLENN WHITING,

*Plaintiff-Appellant*,

VAN IRION,

*Appellant*,

*v.*

CITY OF ATHENS, TENNESSEE; SETH SUMNER; BO PERKINSON; BRANDON AINSWORTH; JAMESON SLIGER; TY GABLE; ROD WALKER; SETH WALKER; DEB CARDIN; TYLER HICKS; OFFICER TOM GARLAND,

*Defendants-Appellees*.

No. 25-5424

United States District Court for the Eastern District of Tennessee at Knoxville.
Nos. 23-cv-0002; 23-cv-00220-221—Travis Randall McDonough, District Judge.

Decided and Filed:  March 13, 2026

Before:  STRANCH, BUSH, and MURPHY, Circuit Judges.

_____

### SANCTIONED COUNSEL

Van R. Irion, LAW OFFICE OFF VAN R. IRION, Knoxville, Tennessee.  Russ Egli, THE EGLI LAW FIRM, Knoxville, Tennessee.

————————————

## OPINION

————————————

JOHN K. BUSH, Circuit Judge.   These consolidated appeals concern several lawsuits filed over an incident at the annual fireworks show hosted by the City of Athens, Tennessee, in 2022, and the subsequent fallout.   By separate opinion issued this date, we affirm the district court in all respects.

This opinion addresses the misconduct of Glenn Whiting's lawyers, Van Irion and Russ Egli, in their briefing before this court and the sanctions we impose for it.   That briefing repeatedly misrepresented the record, cited non-existent cases, and cited cases for propositions of law that they did not even discuss, much less support.   As explained below, Irion's and Egli's misconduct warrants the sanctions laid out in Section II.C.

## I.

As noted, these consolidated appeals arise out of lawsuits that Irion filed on behalf of Whiting over a 2022 fireworks show and its aftermath.   Egli represents Irion and Whiting in one of the appeals.   Irion represents Whiting in the other two.

After we docketed the appeals and conducted our initial review of the briefs, we consolidated the cases.   At that point, we noticed some problems.   Whiting's brief misrepresented the nature of the district court's sanctions order in No. 25-5424.   Also, many of the cases cited in Whiting's briefs either did not exist, did not include the quoted language he claimed they did, or did not discuss or support the proposition for which Whiting cited them.   All told, we found over two dozen fake citations and misrepresentations of fact in Whiting's briefs,[1] which we list in an appendix to this opinion.

—————

[1]This is a conservative estimate.   We call something a "fake citation" or "misrepresentation of fact" only when it is clearly so.   We do not include typos or sloppy citations.   "As those mistakes could be attributed to simple sloppiness in drafting, as opposed to a failure to comply with the basic obligations of legal counsel, they are not the subject of this" opinion.   *Davis v. Marion Cnty. Super. Ct. Juv. Detention Ctr.*, No. 1:24-CV-01918-JRS-MJD, 2025 WL 2502308, at *1 n.1 (S.D. Ind. Sept. 2, 2025).   If we included typos and other errors that are arguably, but not clearly, a misrepresentation or fake citation, we would be looking at far more misstatements of fact and law.

Upon discovering these problems, we ordered Irion and Egli to show cause why they should not be sanctioned. The order instructed them to (1) explain why they should not be sanctioned for citing fake cases, (2) provide a copy from Westlaw or LexisNexis of all the cases and authorities cited in all of the briefs filed across the three appeals, (3) highlight any material that they quoted from those cases, (4) tell us who wrote the briefs in each case, (5) tell us whether the briefs were ghostwritten in whole or in part, (6) tell us whether they used generative AI to write the briefs, and (7) explain how they cite-checked the briefs. Order to Show Cause at 5. Irion and Egli did not respond to these directives. Instead, they said the show cause order was "void on its face for failing to include a signature of an Article III judge," was "motivated by harassment of the Respondent attorneys," and "reflect[ed] illegal ex-parte [*sic*] communications within this Court." Egli Show Cause Response at 1, 4 (No. 25-5454); Irion Show Cause Response at 1, 4 (Nos. 24-5918/5919).

## II.

### A.

We ultimately decide to sanction Irion and Egli under Federal Rule of Appellate Procedure 38 and our inherent authority. We discuss each in turn.

#### 1.

We can "award just damages and single or double costs to the appellee" when we "determine[] that an appeal is frivolous." Fed. R. App. P. 38. "Frivolousness need not be intentional; even inadvertently frivolous appeals are subject to Rule 38 sanctions." *Nix v. Major League Baseball*, 62 F.4th 920, 937 (5th Cir. 2023). Rule 38 focuses on the whole appeal, not just a specific argument. *See Waldman v. Stone*, 854 F.3d 853, 855 (6th Cir. 2017) (order). So even when there might be a handful of colorable arguments, we can sanction the appellant if most of the appellant's briefing was "devoted to frivolous argumentation." *Id.* (quoting *Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1200 (7th Cir. 1987)); *see also Hill*, 814 F.2d at 1200–01.

An appeal can be frivolous as filed, frivolous as argued, or both. *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1578–79 (Fed. Cir. 1991).

An appeal is frivolous as filed when "the judgment by the lower court was so plainly correct and the legal authority contrary to the appellant's position so clear that there really is no appealable issue." 21 *Moore's Federal Practice—Civil* § 338.20[1] (Sept. 2025). Most of these appeals are "obviously without merit *and* . . . prosecuted for delay, harassment, or other improper purposes." *Larry E. Parrish P.C. v. Bennett*, 989 F.3d 452, 457 (6th Cir. 2021) (quoting *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1212 (6th Cir. 1997)). But an appeal is also frivolous as filed when the appellant lacks a "reasonable expectation of altering the district court's judgment based on law or fact." *B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 270 (6th Cir. 2008) (quoting *Wilton Corp. v. Ashland Castings Corp.*, 188 F.3d 670, 677 (6th Cir. 1999)).

An appeal is frivolous as argued when the appellant engages in "misconduct in arguing the appeal," like "distorting the record," "disregarding or mischaracterizing the clear authority against the appellant's position," or "attempting to draw illogical deductions from the facts and the law." 21 *Moore's Federal Practice—Civil* § 338.20[1]; *Walker v. Health Int'l Corp.*, 845 F.3d 1148, 1154 (Fed. Cir. 2017). Substantially misrepresenting the law can also make an appeal frivolous as argued. *Walker*, 845 F.3d at 1154. So an appellant can be sanctioned even when the appeal might facially have some merit if, as here, the appellant misrepresents the record, invents fake case law, or engages in some other form of misconduct. *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1579–80 (Fed. Cir. 1991); *Mitchell v. Bank of New York Mellon*, 835 F. App'x 318, 328–29 (10th Cir. 2020).

In short, the difference between the two is the type of conduct being punished. In frivolous-as-filed cases, "the mere filing of the appeal is in itself frivolous." *Romala Corp. v. United States*, 927 F.2d 1219, 1222 (Fed. Cir. 1991). An example would be when the appeal is plainly barred by a waiver—although the substantive arguments asserted on appeal might have some merit, the act of filing the appeal is itself frivolous because it is barred. *See Bridgeport Music, Inc. v. Smith*, 714 F.3d 932, 944 (6th Cir. 2013). In frivolous-as-argued cases, the arguments made on appeal are frivolous. *Finch*, 926 F.2d at 1579. An example would be when the appellant says that the district court erred in granting a Rule 12(b)(6) motion when the district court granted summary judgment—the mere fact that a complaint states a claim is never enough

No. 24-5918/5919/25-5424      *Whiting v. City of Athens, Tenn.*                    Page 5

to avoid summary judgment.  *Meyer v. U.S. Bank Nat. Ass'n*, 792 F.3d 923, 926–28 (8th Cir. 2015).

We reject any suggestion that Rule 38 does not recognize frivolous-as-argued appeals. True, one reading could suggest that it speaks only to frivolous-as-filed appeals because it discusses the appeal itself as opposed to the arguments made.  *See* Fed. R. App. P. 38 ("If a court of appeals determines that an appeal is frivolous . . . .").   But "[f]rivolousness is determined . . . not in the abstract but in relation to the arguments actually made by the appellant."  *Anderson v. Steers, Sullivan, McNamar & Rogers*, 998 F.2d 495, 496 (7th Cir. 1993).  So the question is whether the appellant has made frivolous arguments in support of reversal.  A frivolous-as-filed appeal violates Rule 38 because no arguments could ever support reversal.  A frivolous-as-argued appeal violates Rule 38 because the arguments made were frivolous, even if arguments that the appellant chose not to advance could have supported reversal.  In that sense, the frivolous-as-argued and frivolous-as-filed appeal are just two sides of the same coin.  The only difference is whether the appellant could have made an argument that would justify reversal.  *See Finch*, 926 F.2d at 1580 n.4 ("In most appellate decisions, both types of frivolity actually seem to have been present.").

The party presentation principle supports this conclusion.  "Courts are essentially passive instruments of government" that "wait for cases to come to them" and "rely on the parties to frame the issues for decision."  *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (first part quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in the denial of reh'g en banc); second part quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)) (cleaned up).  And "judges are not like pigs, hunting for truffles buried in the record."  *Murthy v. Missouri*, 603 U.S. 43, 67 n.7 (2024) (quoting *Gross v. Cicero*, 619 F.3d 697, 702 (7th Cir. 2010)) (cleaned up).  That all means that we are required to take the cases as we find them.

So whether an appeal is frivolous must, at least in part, be based on the arguments that the parties make.  If we could call an appeal frivolous only when we determine that the appellant could never make an argument in support of reversal, then we would be forced to construct our own theory of the case to determine if any good faith arguments could be made to support it.

No. 24-5918/5919/25-5424    *Whiting v. City of Athens, Tenn.*    Page 6

Instead, we decide whether the appeal is frivolous based on the arguments actually made. And that is the core of how courts define a frivolous-as-argued appeal. *See Finch*, 926 F.2d at 1579 ("In the second type of frivolity, while genuinely appealable issues *may* exist, the appellant's contentions in prosecuting the appeal are frivolous.").

Whiting's appeal is frivolous as argued because Irion and Egli submitted fake cases, and inventing case law is a misrepresentation of law.[2] "A fake opinion is not existing law[,] and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law. An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023) (cleaned up); *see also, e.g.*, *Fletcher v. Experian Sols., Inc.*, No. 25-20086, 2026 WL 456842, at *6 (5th Cir. Feb. 18, 2026); *Garner v. Kadince, Inc.*, 571 P.3d 812, 815 (Utah Ct. App. 2025) (per curiam); *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 495 (D. Wyo. 2025). Like Federal Rule of Civil Procedure 11, Federal Rule of Appellate Procedure 38 imposes a duty to present arguments that are well-grounded in law and fact or "[]supported by a reasoned, colorable argument for change in the law." *Coleman v. Comm'r*, 791 F.2d 68, 71 (7th Cir. 1986); *see also* Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 32 (6th ed. Dec. 2025 Update) (*Sanctions*). Submitting fake cases does not meet this standard.

True, some of the cases Whiting cited existed, and some of the propositions of law were legitimate. But we "reject[] any . . . notion that because some authority exists to support a legal proposition it should negate the harm caused by false and hallucinated cases. Put bluntly—absolutely not; period; end of story; all stop." *United States v. McGee*, 806 F. Supp. 3d 1264, 1273 (S.D. Ala. 2025). Citing even a single fake case can be sanctionable because "no brief, pleading, motion, or any other paper filed in any court should contain *any* citations—whether

---

[2]Citing fake cases could be evidence that the appeal is frivolous as filed. Consider, for example, that when AI is used to prepare a brief, "AI hallucinations are more likely to occur when there are little to no existing authorities available that clearly satisfy the user's request—such as, for example, when a lawyer asks a generative AI tool to supply a citation for an unsupported principle of law." *Noland v. Land of the Free, L.P.*, 336 Cal. Rptr. 3d 897, 911 (Ct. App. 2025) (quoting *In re Richburg*, 671 B.R. 918, 924 n.11 (Bankr. D.S.C. 2025)) (cleaned up). But we decline to find here that the citation of fake cases made Whiting's appeal frivolous as filed because we think at least some legitimate case law might have supported reversal, even though we ultimately affirmed the district court.

provided by generative AI or any other source—that" a lawyer has not personally "read and verified." *Noland v. Land of the Free, L.P.*, 336 Cal. Rptr. 3d 897, 901 (Ct. App. 2025). Moreover, citing fake cases can "harm [] the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and [] the reputation of a party attributed with fictional conduct." *ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1347 (S.D. Fla. 2025) (quoting *Mata*, 678 F. Supp. 3d at 448).

Whiting's appeal in No. 25-5424 is also frivolous as argued because he misrepresents the record in that case. He contends that the district court issued sanctions in No. 25-5424 sua sponte, *see* Appellant's Br. in No. 25-5424 at 21 ("Here, Appellants received no order to show cause, no opportunity to brief threshold issues, and no warning that § 1927 was at issue. The sua sponte imposition of sanctions violates procedural due process."), but the sanctions were issued on the City's motion, *see* R. 234, Defs. Omnibus Mem. ISO Mot. for Att'y Fees, PageID 2491 ("The defendants are entitled to an award of reasonable attorney fees pursuant to 28 U.S.C. § 1927." (capitalization and bolding altered)). That one factual misrepresentation changes the analysis because Whiting's entire argument is that he was not given notice of the sanctions that would be imposed. But if someone files a motion expressly asking for sanctions under § 1927, then no reasonable litigant could say he was not on notice of that possibility.

Sanctions are therefore appropriate under Rule 38.

## 2.

We also impose penalties on Irion and Egli pursuant to our inherent authority. Although we do not invoke it often, we have long recognized that appellate courts have the "plenary power" to sanction a litigant whose appeal is "frivolous." *Moist v. Belk*, 380 F.2d 721, 724 (6th Cir. 1967); *Chambers v. Colonial Pipeline Co.*, 408 F.2d 678, 678 (6th Cir. 1969) (per curiam). More commonly invoked as part of the courts' inherent authority, these powers are "necessary for [us] to function as an institution." *In re Smothers*, 322 F.3d 438, 442 (6th Cir. 2003). They "result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 11 (7 Cranch) U.S. 32,

34 (1812)) (quotation marks omitted).  The courts' inherent powers include the "power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and, as a corollary to this proposition, to preserve themselves and their officers from the approach and insults of pollution."  *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 227 (1821).

Courts have these powers because when certain forms of misconduct are "not instantly suppressed and punished, demoralization of the court's authority will follow."  *Cooke v. United States*, 267 U.S. 517, 536 (1925).  These powers let us "protect[] the due and orderly administration of justice" and "maintain[] the authority and dignity of the court."  *Id.* at 539; *see also Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510 (1873).  "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Chambers*, 501 U.S. at 43 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)) (quotation marks omitted).  So statutes governing sanctions do not restrict our inherent authority.  Rather, those laws have been enacted "as an instance of abundant caution" to protect our inherent powers, "or a legislative declaration[] that the power of punishing for contempt shall not extend beyond its known and acknowledged limits."  *Anderson*, 19 U.S. (6 Wheat.) at 227–28.

Inherent authority sanctions are appropriate only when the litigant has acted in bad faith or "willfully abuse[d] judicial processes."  *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006).  Put differently, our case law "requires a finding of bad faith or of conduct 'tantamount to bad faith'" before we can issue inherent authority sanctions.  *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010) (quoting *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003)) (emphasis deleted).

A three-prong test determines whether an attorney for a plaintiff has acted in bad faith so as to permit an award of attorney's fees as a sanction.  *First*, the lawsuit must be meritless, at least in part.  *BDT Prods.*, 602 F.3d at 752; *see also United States v. Akers*, 76 F.4th 982, 991 (10th Cir. 2023).  *Second*, we must find that the litigant knew or should have known that the case was meritless.  *BDT Prods.*, 602 F.3d at 752.  *Third*, we must conclude that the litigant had an improper motive.  *Id.*

No. 24-5918/5919/25-5424     *Whiting v. City of Athens, Tenn.*                    Page 9

"Harassing the opposing party, delaying or disrupting litigation, hampering the enforcement of a court order, or making improper use of the courts are all examples of the sorts of conduct that will support a finding of bad faith or improper purpose." *Id.* at 754. Additionally, a litigant acts in bad faith when he "use[s] the court system to try to force a result that [he] could not obtain under the applicable law." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 525 (6th Cir. 2002). After all, "[b]ad faith . . . is not restricted to situations where the action was filed in bad faith. Bad faith may also be found in the conduct of the litigation." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021).

Inherent authority sanctions are appropriate in this case. We have already concluded that Whiting's appeal in this court is meritless, and any reasonable attorney should know that a case is meritless if the only authority on which he can rely is a figment of imagination. Finally, we conclude that Irion and Egli have acted with an improper purpose because they have "used the court system to try to force a result that [they] could not obtain under the applicable law." *First Bank of Marietta*, 307 F.3d at 525. Further, when given an opportunity to explain how such citations appeared in their briefing, Irion and Egli failed to provide an explanation and instead argued that the court's show cause order was void and invalid.

Although citing fake cases violates Federal Rule of Appellate Procedure 38, Rule 38 alone is not "up to the task" of sanctioning this conduct, *Chambers*, 501 U.S. at 50, because Rule 38 allows only for the imposition of costs and attorneys' fees, *Sanctions* § 33. But we think other sanctions are also appropriate, so we employ our inherent authority.

Our conclusion aligns with that of other courts that have used their "inherent authority to sanction the misuse of AI when it affects the Court's docket, case disposition, and ruling." *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, No. 17-CV-81140, 2025 WL 1440351, at *3 (S.D. Fla. May 20, 2025); *see Fletcher*, 2026 WL 456842, at *6. True, courts have generally relied on a codified rule, specifically Federal Rule of Civil Procedure 11, instead of their inherent authority, *see, e.g.*, *Mata*, 678 F. Supp. 3d at 459, but the district courts generally have much more discretion in crafting a sanction under Rule 11 than we do under Federal Rule of Appellate Procedure 38, *see Sanctions* §§ 16, 33; *compare Parrish*, 989 F.3d at

458 (imposing only attorneys' fees as a sanction under Rule 38), *with King v. Whitmer*, 71 F.4th 511, 519–20 (6th Cir. 2023) (imposing CLE hours, attorneys' fees, and disciplinary referrals under Rule 11).  Accordingly, we must look to our inherent authority to fashion an appropriate sanction.

**B.**

Although Irion and Egli did not seriously respond to our show cause order, we construe their responses as making four objections: (1) the show cause order violated Sixth Circuit Local Rule 46, (2) attorney-client and work-product privilege excused compliance with the show cause order, (3) the order was invalid because it allegedly came from several ex parte communications, and (4) the order is void because the clerk signed it.

The show cause order did not violate Local Rule 46.  Local Rule 46 governs suspension, disbarment, and other forms of attorney discipline.  *See* 6th Cir. Local Rule 46(c)(3).  But the rule expressly contemplates that this court could impose litigation sanctions and "does not limit the court's" power to do so.  *Id.*  The show cause order cited Federal Rule of Appellate Procedure 38 and *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991), which govern sanctions for a frivolous appeal and inherent authority sanctions, respectively.  Put simply, the show cause order did not initiate disciplinary proceedings under Local Rule 46, nor do we impose discipline under that rule.  Instead, we exercise our inherent authority and our powers under Rule 38 to sanction Irion and Egli for bad-faith litigation conduct.

Our suggestion that the briefs may have been ghostwritten[3] does not support Irion's and Egli's challenge to the show cause order, either.  The Eastern District of Tennessee's decision finding that Irion improperly ghostwrote pleadings is on Bloomberg, LexisNexis, and Westlaw. *See In re Irion*, No. 1:24-DM-7, 2025 BL 286140, 2025 LX 350467, 2025 WL 2319537, at *31–

---

[3]Ghostwriting is when one person writes the document while another person takes credit for it without acknowledging the true author's identity.  *See The American Heritage Dictionary of the English Language* 741 (4th ed. 2000).  Legal authorities generally discuss ghostwriting for a pro se litigant, *see, e.g.*, *Duran v. Carris*, 238 F.3d 1268, 1272 (10th Cir. 2001), but we see no reason why rules regulating ghostwriting should apply in only the pro se context.  The primary concern with ghostwriting is that the true author would escape liability for his conduct, *see In re Mungo*, 305 B.R. 762, 768 (Bankr. D.S.C. 2003); *Ellis v. Maine*, 448 F.2d 1325, 1328 (1st Cir. 1971), and that concern is just as acute when a lawyer ultimately signs the ghostwritten pleading.

32 (E.D. Tenn. Aug. 4, 2025). Irion has appealed that order to our court, which is docketed in this court under docket number 25-5874. No one, therefore, should be surprised that we would find out about the ghostwriting.

Our order does not violate the work-product or attorney-client-privilege doctrines, either. Under those doctrines, we may not compel the disclosure of a lawyer's notes, prior drafts of briefs, or legal advice absent waiver. *See, e.g.*, *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 294 (6th Cir. 2002). But the order to show cause sought no such thing. Whether and how the briefs were cite-checked does not implicate conversations regarding legal advice, nor do they ask for any work product of any kind.

Finally, our orders are not invalid simply because the clerk signed them. We have already told Irion and Egli that our orders are not void when the clerk signs them *in this very case*. *Whiting v. City of Athens*, No. 24-5886, 2025 U.S. App. LEXIS 13507, at *1 (6th Cir. June 2, 2025). And the Supreme Court has twice denied petitions for mandamus from Irion and Egli demanding that the clerk stop signing our orders. *See In re Murphy*, 146 S. Ct. 286 (2025); *In re Irion*, No. 25-785 (U.S. Mar. 9, 2026). Neither Irion nor Egli points us to any authority saying that the clerk may not sign our orders.[4]

---

[4]Irion and Egli have repeatedly questioned our practice of letting the clerk sign our orders, even suggesting that she is deciding cases without us knowing about it. *See* Pet. for Writ of Mandamus and/or Prohibition, *In re Irion*, No. 25-785, at *1 (U.S. Jan. 5, 2026). Irion's and Egli's concerns are baseless, as a recitation of relevant facts reveals.

The dispute underlying the consolidated appeals first came before this panel in 2024, when we decided the merits of Whiting's claims in No. 24-5918. *See generally Whiting v. City of Athens*, No. 23-6082, 2024 WL 3537651 (6th Cir. July 25, 2024). After we decided that case, the district court sanctioned Whiting, and Whiting appealed that order. R. 57, Order, PageID 667 (No. 24-5918); R. 58, Notice of Appeal, PageID 680 (No. 24-5918).

That triggered our must panel procedure. "In appeals after this court returns a case to the lower court or agency for further proceedings, or after the Supreme Court of the United States remands a case to this court, the original panel will determine whether to hear the appeal or whether it should be assigned to a panel at random." 6th Cir. I.O.P. 34(b)(1). We accepted the must panel. Appellees' briefing also said that Nos. 24-5919 and 25-5424 were pending before us, Appellees' Br. in No. 24-5918 at 13–14, so we reviewed the briefs in those cases, saw they were related to No. 24-5918, and consolidated them, Order of 8/28/2025 at 1; *see, e.g.*, 16A *Wright and Miller's Federal Practice and Procedure* § 3949.2 (5th ed. Sept. 2025 Update); *Circle City Broad. I, LLC v. AT&T Servs., Inc.*, 99 F.4th 378, 383 (7th Cir. 2024).

Prompted by a footnote in the City's briefing suggesting that the citations in Whiting's briefs were illegitimate, *see* City's Br. in No. 25-5424 at 22 n.8, we then issued a show cause order, with the circuit clerk (per our customary procedure) signing the order.

**C.**

The final question, then, is what our sanctions in this case should be.

Under Federal Rule of Appellate Procedure 38, we can award damages and single or double costs. "The amount awarded as just damages may include all of the expenses incurred on appeal," including "an award of attorneys' fees," "or any lesser sum that the court deems appropriate." *Sanctions* § 33. Rule 38 does not require us to determine whether the attorneys' fees were "reasonable," so we can award whatever amount the appellee's counsel charged the appellee if we are so inclined. *See Sun-Tek Indus. v. Kennedy Sky-Lites, Inc.*, 865 F.2d 1254, 1255 (Fed. Cir. 1989). And the costs that can be awarded are those listed in 28 U.S.C. § 1920. *Sanctions* § 33.

Our inherent authority powers are much broader. The "inherent power sanctions available to courts include fines, awards of attorneys' fees and expenses, contempt citations, disqualifications or suspensions of counsel, and drawing adverse evidentiary inferences or precluding the admission of evidence." *Shepherd v. ABC*, 62 F.3d 1469, 1475 (D.C. Cir. 1995).

These sanctions protect the legitimacy of our proceedings. Our adversarial system works only when "lawyers and courts alike are able to rely on one another's representations." *Azar v. Garza*, 584 U.S. 726, 730 (2018) (per curiam). To that end, we expect all lawyers appearing before us "to accurately represent the contents of the record." *Pemberton v. Bell's Brewery, Inc.*,

---

After appellees filed their response to the show cause order (which we explicitly invited), Irion and Egli moved to strike that response. We then issued an order denying the motion to strike, again with the circuit clerk's signature on the order. Irion and Egli filed an objection and appeal of that order, asserting that they were "entitled to have the motion to strike reviewed by the Sixth Circuit Judges." Objection and Appeal in No. 25-5424 at 1, 6. The clerk instructed Irion and Egli to refile that motion because it did not comply with our local rules. Irion and Egli then moved to have the panel instruct the clerk to accept the objection and appeal, asserting that the clerk was "unconstitutional[ly] practicing [] law rather than filing documents as required by law." Motion to Unlock in No. 25-5424 at 1. The judges reviewed the motion and issued an order denying that motion. Again, our order bore the circuit clerk's signature.

In response, Irion and Egli petitioned the Supreme Court for a writ of mandamus and/or prohibition, suggesting that the judges on the panel are not reviewing their motions or their cases and that the clerk of court is deciding cases in parallel to the judges on the court. That petition was denied. *See In re Irion*, No. 25-785 (U.S. Mar. 9, 2026).

We are aware of Irion's and Egli's motions, and we have personally reviewed each of them. We also personally reviewed and drafted the order to show cause. The mere fact that the clerk signed them does not change that, nor does it suggest any impropriety on our part or hers.

150 F.4th 751, 769 n.6 (6th Cir. 2025).  After all, if lawyers and judges cannot trust each other, legal advocacy would quickly become pointless, and we would face litigants "tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity."  *Mata*, 678 F. Supp. 3d at 448–49.

The Supreme Court of Tennessee, which has primary supervisory authority over Irion and Egli as Tennessee-based attorneys, has said that violating the duty of candor to the tribunal "unnecessarily impede[s]" the "resolution" of the cases that the lawyers are litigating and is therefore "prejudicial to the administration of justice."  *Dunlap v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 595 S.W.3d 593, 615 (Tenn. 2020).  The American Bar Association (ABA), whose Model Rules of Professional Conduct govern the practice of law in this court, *see* 6th Cir. Local Rule 46(c)(1)(A), agrees, noting that violating the duty of candor to the tribunal can "render[] the litigation a sham," prejudicing the rights of all involved.  *Disclosure Obligations of a Lawyer Who Discovers that Her Client Has Violated a Court Order During Litigation*, ABA Formal Op. 98-412 (Sept. 9, 1998).

We wholeheartedly agree.  Irion and Egli breached the trust that we must have in the lawyers appearing before us.  They have brought the profession into disrepute.  Irion's and Egli's failure to comply with the basic rules of our profession has forced us and the City to unnecessarily expend time and resources on a case that should have been litigated and resolved straightforwardly but was not.  More importantly, by breaching our trust, we can no longer rely on the representations in Irion's and Egli's briefs, harming both their clients (whose cases are now viewed with skepticism) and this court (who must now independently verify everything Irion and Egli write).  Finally, Irion and Egli have sullied the reputation of our bar, which now must litigate under the cloud of their conduct.  We therefore issue these sanctions to Irion and Egli, the rationales for which we will explain below:

1.  Irion and Egli must jointly and severally reimburse appellees in full for their reasonable attorneys' fees on appeal in all three appeals.

2.  Irion and Egli must jointly and severally pay double costs to appellees for costs incurred under 28 U.S.C. § 1920 on appeal in all three appeals.

3.  Appellees must file an accounting of their costs and attorneys' fees on appeal, with supporting documentation, no later than seven days from the date of this

order.  Irion and Egli shall file any responses or objections to appellees' requests for costs and attorneys' fees on appeal no later than seven days thereafter.  There will be no replies.

4. Irion and Egli must each separately and individually pay $15,000 to the registry of this court as punitive sanctions for the proceedings in this court in all three appeals.

5. The clerk will forward a copy of this order to the chief judge to consider disciplinary proceedings under Sixth Circuit Local Rule 46.

6. If Irion and Egli are financially unable to comply with some or all of the requirements of this order, they must file an affidavit under seal describing their financial situation along with their objections to appellees' fee requests.

A substantial penalty is necessary to compensate the City for the time spent dealing with Whiting's litigation and for having to deal with the rampant misconduct Irion and Egli committed on appeal.[5]  Although courts often limit the amount of fees to "those the losing party foisted on the winner," *In re Cent. Ice Cream Co.*, 841 F.2d 732, 735 (7th Cir. 1988), the pervasive misconduct makes these appeals almost entirely frivolous.  We found systemic problems with Whiting's briefing, including misrepresentations of fact and law, improper citation formatting, an inadequate record, and copious drafting errors.  Even if there might have been a grain of merit in these appeals, we can disregard the non-frivolous aspects and treat the entire appeal as frivolous.  *Waldman*, 854 F.3d at 855.  Given how many problems there were in this case, we conclude that appellees should be fully compensated for being forced to litigate this appeal.

We award double costs to appellees because that is the stiffest penalty available under Rule 38.  Rule 38 is supposed "to deter frivolous appeals and thus preserve the appellate calendar for cases worthy of consideration."  *Pac-Tec, Inc. v. Amerace Corp.*, 903 F.2d 796, 804 (Fed.

---

[5]We could have gone much further.  Other courts have dismissed cases, disqualified lawyers, or revoked their pro hac vice status for similar conduct.  *ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1357 (S.D. Fla. 2025); *Johnson v. Dunn*, 792 F. Supp. 3d 1241, 1267–68 (N.D. Ala. 2025); *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 499 (D. Wyo. 2025).  But only the chief judge can suspend or disbar a lawyer from practice before this court, *see* 6th Cir. Local Rule 46(c)(4)(C), so those sanctions are not available to us, and we choose not to sanction Whiting himself because we have no evidence that Whiting participated in the misconduct.

Finally, we could have held Irion and Egli in contempt because they flagrantly ignored our order to show cause.  *See, e.g.*, *NLRB v. Bannum, Inc.*, 93 F.4th 973, 979–80 (6th Cir. 2024); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–30 (1994).  But we do not think additional sanctions are necessary to send the message we send here.

Cir. 1990).  Double costs will send the loudest message that this type of conduct is not allowed in our court or any other.

We can issue fines when issuing inherent authority sanctions, *Shepherd*, 62 F.3d at 1475, and courts have generally issued fines for similar misconduct, *see, e.g.*, *Mata*, 678 F. Supp. 3d at 466; *Wadsworth*, 348 F.R.D. at 499.  We agree that this is appropriate.  Citing fake cases "unnecessarily burdens the court and the taxpayers," so courts can and should fine the offending lawyers to reimburse the court for its time.  *Noland*, 336 Cal. Rptr. 3d at 914.  A lawyer's misrepresentation of the law and facts heavily burdens the courts and their staffs.  We rely on good briefing to narrow and clarify the issues for our review while helping us locate the facts and the law that will govern the case.  *See, e.g.*, *A1 Diabetes & Med. Supply v. Azar*, 937 F.3d 613, 620 (6th Cir. 2019); *Goodwin v. Unum Life Ins. Co. of Am.*, 137 F.4th 582, 589 n.2 (6th Cir. 2025).  But we did not have that assistance from Whiting's counsel because we could not rely on any of their briefing to truthfully explain the facts and governing law.  Their submission of fake cases and factual misrepresentations forced the court to individually verify every single citation to determine the appropriate sanction.  To call these consolidated appeals a burden would be an understatement.  We choose $15,000 each because (1) the misconduct was spread across three cases instead of just one and (2) smaller fines have plainly been inadequate—as is evidenced by the continuous stream of cases raising the same problems.

Four additional aggravating factors in this case warrant particularly harsh sanctions.

*First*, Irion and Egli are appealing sanctions orders, and they have engaged in further misconduct.  Although the district court's sanctions orders were for filing frivolous lawsuits instead of for lacking candor to the tribunal, we find it deeply concerning that a lawyer would engage in further misconduct on appeal from a finding that they engaged in misconduct.  *See Nevin v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 271 S.W.3d 648, 658 (Tenn. 2008) ("repeated misconduct" warrants harsher discipline); ABA Standards for Imposing Lawyer Sanctions § 8.2 (2d ed. 2019) (similar).

*Second*, Irion and Egli have been disciplined for lack of candor to the tribunal before.  In 2017, the Supreme Court of Tennessee publicly censured Egli for lack of candor to the tribunal.

*See In re Egli*, No. M2017-00608-SC-BAR-BP (Tenn. Mar. 30, 2017) (per curiam).  And in August 2025 (while Irion and Egli were briefing these appeals), Irion was suspended from the Eastern District of Tennessee for five years because he lied to the district court in No. 25-5424. *In re Irion*, 2025 WL 2319537, at *13, *37.  Despite this, both Irion and Egli submitted several briefs to this court with fake citations and misrepresentations of the record.

*Third*, Irion and Egli defied this court's order to show cause and refused to provide the information we requested.  For over 150 years, the Supreme Court has said that litigants *must* comply with court orders, whether they are erroneous or not.  *See, e.g.*, *Howat v. Kansas*, 258 U.S. 181, 189–90 (1922); *In re Chiles*, 89 U.S. (22 Wall.) 157, 169 (1874).  If a lawyer or litigant fails to comply with a court order, he is subject to contempt, even if the order is ultimately reversed or vacated.  *Maness v. Meyers*, 419 U.S. 449, 458–60 (1975); *Worden v. Searls*, 121 U.S. 14, 26–27 (1887).  By refusing to comply with the order, Irion and Egli have only compounded the violations for which we sanction them in this case.

*Fourth*, the responses to the show cause order that Irion and Egli did file show a stunning lack of respect for this court, the members of the panel and their staffs, and the rule of law.  Most litigants caught submitting fake cases have apologized and sought forgiveness, rightly recognizing the seriousness of their misconduct.  *See, e.g.*, *Al-Hamim v. Star Hearthstone, LLC*, 564 P.3d 1117, 1125 (Colo. Ct. App. 2024); *Elizondo v. City of Laredo*, No. 5:25-CV-50, 2025 WL 2071072, at *3 (S.D. Tex. July 23, 2025).  By contrast, Irion and Egli scolded this court and accused it of engaging in a vast conspiracy to harass them.  More severe sanctions are clearly warranted to deter misconduct like this.

## III.

The courts are, should be, and must be, open to all litigants who have suffered harms at the hands of the government.  And nothing in this opinion should be construed as a holding that Irion and Egli were appropriately sanctioned simply because they lost.  That is far from the truth.  Irion and Egli have engaged in a coordinated effort to harass the City of Athens, Tennessee, and its employees through non-stop litigation over the past five years.  They asserted claims that they knew were meritless to drain the resources of the City.  They then compounded the problems by

submitting briefs to this court with fake citations and factual misrepresentations and defying the order to show cause why they should not be sanctioned. To protect the integrity of our proceedings, we take the measures outlined in section II.C.

The panel will retain jurisdiction to the extent required to enforce the terms of this opinion.

No. 24-5918/5919/25-5424     *Whiting v. City of Athens, Tenn.*          Page 18

---

## APPENDIX

---

**Appellant's Brief in No. 25-5424**

- On pages 1, 13, and 20, Whiting cites "*Jones v. Hamilton Cnty.*, 29 F.4th 647, 655 (6th Cir. 2022)," for the proposition that we review sanctions under "42 U.S.C. § 1927" for an abuse of discretion. The Federal Reporter citation does not correspond with a Sixth Circuit decision. The decision at 29 F.4th 647 is a Tenth Circuit unfair competition case. *See Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630, 647 (10th Cir. 2022). And the decision at 29 F.4th 655 is a Tenth Circuit appeal from a guilty plea. *See United States v. McIntosh*, 29 F.4th 648, 655 (10th Cir. 2022). Neither Tenth Circuit case discusses attorneys' fees or sanctions. This court has issued a decision captioned "*Jones v. Hamilton County*," but it was an unpublished opinion from 2023. *See Jones v. Hamilton Cnty.*, No. 23-3002, 2023 WL 7391704 (6th Cir. Nov. 8, 2023) (per curiam), *cert. denied*, 144 S. Ct. 1098 (2024). That case does hold that we review sanctions under 28 U.S.C. § 1927 for an abuse of discretion. *See id.* at *3. But it does not, as Whiting stated, hold that "pro se litigants are not subject to § 1927." Appellant's Br. 20. To the contrary, *Jones* affirmed the district court's imposition of sanctions under § 1927. *Jones*, 2023 WL 7391704, at *3.

- On pages 3, 14, 22, and 23, Whiting cites "*Espinosa*, 559 U.S. 260 (2010)" and "*Espinosa v. United Student Aid Funds, Inc.*, 559 U.S. 260, 272 (2010)," for the proposition that the district court violated Whiting's due process rights by failing to give him enough time to prepare his pleadings and by denying him access to the CM/ECF electronic filing system. But the case is actually captioned "*United Student Aid Funds, Inc. v. Espinosa*." Moreover, it was about whether the bankruptcy court should have granted Rule 60(b) relief because the debtor did not serve a creditor with a summons and complaint in an adversary proceeding.

No. 24-5918/5919/25-5424    *Whiting v. City of Athens, Tenn.*    Page 19

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 264 (2010). It had nothing to do with unreasonable deadlines or ECF access.

- On page 4, Whiting cites paragraph 32 of his Complaint to assert that "citizens were forced to park on highways and streets," but it states no such thing. *See* R. 31, Complaint, PageID 323.

- On page 16, Whiting cites "*Berg v. Knox Cnty., TN*, 2024 WL 2012345, at *4 (6th Cir. Mar. 12, 2024)," for the proposition that "recusal [is] mandated when extrajudicial commentary demonstrates bias." We cannot find this case. The WL citation does not generate a case. We could not find the opinion in our opinions archive. Indeed, the only source on Westlaw that cites to a Sixth Circuit decision called "*Berg v. Knox Cnty.*" is Whiting's briefing in this case. We found three district court opinions captioned as "*Berg v. Knox County, Tennessee*" in Westlaw, but none of them discuss judicial recusals. *See generally Berg v. Knox County*, No. 3:20-CV-00019-DCLC, 2020 WL 7078374 (E.D. Tenn. Sept. 28, 2020); *Berg v. Knox County*, No. 3:22-CV-272-KAC-JEM, 2023 WL 122904 (E.D. Tenn. Jan. 6, 2023); *Berg v. Knox County*, No. 3:20-CV-19-DCLC-HBG, 2020 WL 13888749 (E.D. Tenn. Dec. 17, 2020).

- On pages 17 and 19, Whiting cites "T.C.A. § 29-12-119," but we cannot find a section 29-12-119 in the Tennessee Code Annotated.

- On pages 17 and 20, Whiting quotes *Fox v. Vice*, 563 U.S. 826 (2011), for the propositions that (1) "fee awards 'must be limited to the hours reasonably expended on' the frivolous claim," (2) "[t]he Court 'may make . . . a percentage reduction'" of a lawyer's requested fees, and (3) "[u]nsupported 'attorney conjecture' on apportionment" of attorneys' fees "is impermissible." None of those quotes (which we have not modified) appear in *Fox*.

No. 24-5918/5919/25-5424     *Whiting v. City of Athens, Tenn.*                    Page 20

### Appellant's Brief in No. 24-5918

- On page 3, Whiting asserts that another person was successfully intimidated out of suing the City for fear of retaliation, but the exhibit Whiting cites states no such thing.  *See* R. 42-4, Exhibit, PageID 568–77.

- On page 14, Whiting states, "The District 'Court must accept as true all the factual allegations in the Complaint and construe it in the light most favorable to Plaintiff.' *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)." That quoted language does not appear in *Morgan*.  *See* 829 F.2d at 11–12 & n.2.

- On page 14, Whiting states, "This Court has made clear that , [*sic*] '[T]he mere fact that a plaintiff did not prevail does not mean that the claim was frivolous.' *Adcock-Ladd v. Secretary of the Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)." *Adcock-Ladd* does not contain the quoted language, and it is not about frivolous cases.  *See* 227 F.3d at 348.

### Reply Brief in No. 24-5918

- On page 1, Whiting states, "This Court has made clear that , [*sic*] '[T]he mere fact that a plaintiff did not prevail does not mean that the claim was frivolous.' *Adcock-Ladd v. Secretary of the Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)." *Adcock-Ladd* does not contain the quoted language, and it is not about frivolous cases.  *See* 227 F.3d at 348.

- On pages 4–5, Whiting states (unmodified on our part):

  However, to award fees the District Court had to find that the claims were completely without merit. *Fox*, 563 U.S. at 834. As this Court has repeatedly explained, "[T]he mere fact that a plaintiff did not prevail does not mean that the claim was frivolous." *Adcock-Ladd*, 227 F.3d at 350. In other words, failure to achieve reversal on the merits of the underlying claim on appeal does not mean that the claim was frivolous. *Id*. These are two different standards. Yet both require consideration of the merits or lack thereof of the underlying claims.

The quote does not appear in *Adcock-Ladd*, and neither *Fox* nor *Adcock-Ladd* supports the other propositions stated in the quote.

**Appellant's Brief in No. 24-5919**

- On page 4, Whiting states "it is well settled that the First Amendment does not protect speech that knowingly asserts false statements of fact. *United States v. Alverez*, 567 U.S. 709, 721 (2012)." *Alvarez* states the opposite: "This opinion . . . rejects the notion that false speech should be in a general category that is presumptively unprotected." *Id.* at 721–22 (plurality opinion).

- On page 5, Whiting states, "Yet the District Court's order clearly rejects plaintiff's assertion that the defendant Mayor's statements were false. *See* R.44 at PageID#375." PageID 375 is part of Record Entry 31, and neither Record Entry 44 nor PageID 375 supports such an assertion.

- On pages 6 and 15–16, Whiting asserts that the Supreme Court overruled the district court's legislative immunity analysis in *Lindke v. Freed*, 601 U.S. 187 (2024). But *Lindke* is about the appropriate test to apply to determine whether a public official engages in state action under § 1983 when he blocks someone on social media. 601 U.S. at 190–91. The case had nothing to do with legislative immunity.

- On pages 6 and 15–16, Whiting asserts that we "noted" the "murkiness" of the legislative immunity analysis as applied to social media posts in *Lindke v. Freed*, 37 F.4th 1199, 1202 (6th Cir. 2022), *vacated and remanded*, 601 U.S. 187 (2024). But again, *Lindke* was not about legislative immunity. *See Lindke*, 37 F.4th at 1202.

- On page 7, Whiting states, "The District 'Court must accept as true all the factual allegations in the Complaint and construe it in the light most favorable to Plaintiff.' *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)." That quoted language does not appear in *Morgan*. *See* 829 F.2d at 11–12 & n.2.

No. 24-5918/5919/25-5424     *Whiting v. City of Athens, Tenn.*                    Page 22

- On page 8, Whiting states, "This Court has made clear that , [*sic*] '[T]he mere fact that a plaintiff did not prevail does not mean that the claim was frivolous.' *Adcock-Ladd v. Secretary of the Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)." *Adcock-Ladd* does not contain the quoted language, and it is not about frivolous cases.  It is about whether attorneys' fees should be based on the plaintiff's or the defendant's home market.  *See Adcock-Ladd*, 227 F.3d at 348.

- On page 14, Whiting cites *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485 (6th Cir. 2013), and states in a parenthetical that we "affirm[ed] denial of fees where bare affidavits were insufficient."  In *Kent State* we affirmed a district court's ruling granting attorneys' fees and rejected an argument that "the failure to provide appropriate documentation should bar a court from awarding any fees at all."  512 F. App'x at 493–94.

- On page 19, Whiting has the following block quote (without modification on our part):

> [O]ne purpose of the provision in 28 U.S.C. § 455 that any judge of the United States shall disqualify himself in any case in which he has been a material witness, is to prevent the judge from having to pass on the competence and veracity of his own testimony given with respect to the matter presently in controversy before him. *In re Continental Vending Machine Corp.*, 543 F.2d 986 (2d Cir. 1976).

Although *Continental Vending* supports this proposition, this quote does not appear in the decision.

### Reply Brief in No. 24-5919

- On page 1, Whiting states, "This Court has made clear that , [*sic*] '[T]he mere fact that a plaintiff did not prevail does not mean that the claim was frivolous.' *Adcock-Ladd v. Secretary of the Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)." *Adcock-Ladd* does not contain the quoted language, and it is not about frivolous cases.  *See* 227 F.3d at 348.

No. 24-5918/5919/25-5424    *Whiting v. City of Athens, Tenn.*                Page 23

- On pages 1–2, Whiting states, "Appellees' brief asserts in its summary that 'The Appellant waived his right to contest the underlying motion for fees because he did not file any response in the District Court.' (Doc.32, at Page 15). Appellees' statement is a lie."  (footnote omitted).  That quote does not appear in the City's brief.  Instead, the City states that Whiting "waived his right to contest" the fees and sanctions motion "because he did [not] *timely file a response*."  City's Brief in No. 24-5919 at 9 (emphasis added).

- On page 2, Whiting states:

    Later in the same brief Appellees admit that Appellant did file an opposition to the motion for attorney's fees: 'Though the Appellant responded in opposition to the Appellees' original Motion for Attorney Fees which was mooted by the reissued Memorandum Opinion, the Appellant never responded to the Appellee's Second Motion for Attorney Fees.' *Id*. at p.22.

That quote does not appear in the City's Briefing in No. 24-5919.

- On page 2, Whiting states:

    Appellants explained the situation in their initial brief: "Judge McDonough's order granting attorney's fees against the plaintiff and his attorney asserts that the plaintiff failed to oppose defendants' motions for fees. *(R.57 at PageID#669-70)*. This is a mischaracterization. The plaintiff did oppose. *(R.37, P's Opp. Mtn. Atty. Fees)*. However, McDonough withdrew his initial order and replaced it a week prior to plaintiff filing his opposition. McDonough's statements on 'Timeliness' in his order *explains that plaintiff's opposition was filed in response to defendants' first motion for attorney's fees, and that defendants filed a revised motion after plaintiff had filed his opposition to defendants' first motion. The motions and response asserted the same facts and arguments. McDonough was well aware that the plaintiff had filed a substantive response, but rather than recognizing this procedural timing error, caused by the Court's erroneous entry of its first order, McDonough instead concluded that the plaintiff had not opposed defendants' second motion. This is yet another example of McDonough's vehement bias against the plaintiff." (Doc.29, Appellant Br. at FN2 [sic]). Yet Appellees' brief simply ignores this statement and reiterates the District Court's ruling.

No. 24-5918/5919/25-5424    *Whiting v. City of Athens, Tenn.*                    Page 24

The italicized portions of that quote do not appear in footnote two of Whiting's brief.

- On page 2, Whiting states, "Appellees assert 'The Appellant also did not appeal the dismissal of the defamation claim in the first appeal, and now cannot protest that the District Court's ruling on that defamation claim was incorrect.' Again, the Appellees fail to cite ANY authority in support of this statement, because it is an erroneous assertion of law." That quote does not appear in the City's brief.

- On page 3, Whiting states (unmodified on our part):

  However, to award fees the District Court had to find that the claims were completely without merit. *Fox*, 563 U.S. at 834. As this Court has repeatedly explained, "[T]he mere fact that a plaintiff did not prevail does not mean that the claim was frivolous." *Adcock-Ladd*, 227 F.3d at 350. In other words, failure to achieve reversal on the merits of the underlying claim on appeal does not mean that the claim was frivolous. *Id*. These are two different standards. Yet both require consideration of the merits or lack thereof of the underlying claims.

The quote does not appear in *Adcock-Ladd*, and neither *Fox* nor *Adcock-Ladd* supports the other propositions stated in the quote.

### The Show Cause Responses

- On page 1, Irion and Egli cite 6th Cir. Local Rule 45, Fed. R. App. P. 45, Fed. R. Civ. P. 77(c)(2)(D), and 18 U.S.C. § 505 for the proposition that the show cause order needed to be signed by an Article III judge. But those authorities require no such thing.

- On page 1, Irion states "and 'unconstitutional delegation of judicial authority,' U.S. Const. Art.III §1." Irion Show Cause Response at 1 (Nos. 24-5918/5919) (reproduced unmodified). Article III, § 1, of the Constitution does not contain that quote.